## In re Estate of William Hubert, deceased. Appeal of Mary A. Widmyer.

*Will—Construction of—Sale—Conversion.*

Testator's will was as follows: "I, H. do now make my last will, that after my death that all my real estate I will all to my wife, Sophia, that she can do as she see best. My daughter, Sallie, if she should live longer than her mother, she shall have as long as she remains single, but if get married it shall be sold and equal share—first there shall be a tomb-stone for both." *Held,* that the balance of the fund raised by the sale of testator's real estate after payment of debts should be invested for the daughter for her life, or until she marries.

Argued May 17, 1897. Appeal, No. 402, Jan. T., 1896, by Mary A. Widmyer, from decree of O. C. Lancaster Co., dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Exceptions to auditor's report.

William Hubert, of the city of Scranton, died March 24, 1893, leaving a will as follows:

"LANCASTER, July the I, 1890.

"I William Hubert Due Now Make My Last Will that after My Detel that all My Rele Estate i Will all to My Wife Shoia hubert that Shee can Due as shee as shee s eese Best My Darter Salley Hubert if shee Shut Life Longer then hur Moher shee shall hafe as Lon She Remes sing But if Giest Marat it shall Bi sold and Ekel shers ivs fixt ther shall be a tume Sunn for boih William Hubert Wils."

The case was referred to D. McMullen, Esq., as auditor, who reported as follows:

William Hubert, the decedent, died on March 24, 1893, having made a will, dated July 1, 1890, which was duly proved on October 25, 1893. The will is apparently in decedent's own handwriting and is very short, and crudely drawn; by reason of the imperfect spelling and poor penmanship it is somewhat difficult to decipher. A careful examination, however, satisfies the auditor that a correct reading of the instrument is as follows:

"LANCASTER, July 1, 1890.

"I, William Hubert, do now make my last will, that after my death that all my real estate I will all to my wife, Sophia Hubert, that she can do as she sees best.

"My daughter, Sallie Hubert, if she should live longer than her mother, she shall have as long as she remains single, but if gets married it shall be sold and equal share—first there shall be a tomb-stone for both.

"WILLIAM HUBERT.

"Witness:
"JOHN TRISSLER."

Letters of administration, with the will annexed, were granted to William T. Hubert, son of deceased, the present accountant, who on November 20, 1893, presented his petition to the orphans' court of Lancaster county, setting forth, among other things, that the testator left personal property worth about $100, and a dwelling house and lot of ground on the north side of West Orange street, No. 231, containing in front fourteen feet and ten inches and in depth two hundred and forty-five feet; that the personal property was insufficient to pay his debts, and praying for an order of court to sell said real estate for payment of debts. An order of sale was granted by the court as prayed for and the real estate was sold. The testator owned no other real estate.

Sophia Hubert, the testator's widow, is dead, and the surviving heirs are William T. Hubert, the accountant, a son of decedent; Mrs. Kate Martin, Mrs. Mary Widmyer and Sallie Hubert, daughters of the decedent, and Mrs. Carrie Bitter, Mary Bowman, Hattie Bowman, William Bowman and Daisy Bowman, children of Mrs. Hattie Bowman, a deceased daughter of said William Hubert.

An account was filed by William T. Hubert on May 19, 1894, in which he charges himself with proceeds of the real estate, $2,350, and asks credit for debts and funeral expenses, and expenses of administration, paid to the amount of $618.74, leaving a balance in his hands of $1,731.66. This balance, which it is to be observed is wholly the proceeds of real estate, is the fund to be distributed. There were no claims presented by creditors, and the whole balance, less costs of audit, is therefore to be distributed among the legatees.

Sallie Hubert claims that under her father's will she has a life estate in the fund so long as she remains unmarried, and asks to have it invested for her benefit.  The remaining children and grandchildren contend that the fund in the hands of the accountant is to be distributed among all the heirs, according to the provision of the intestate laws.  The sale for payment of debts, it is claimed, worked a conversion of the real estate into personalty and requires a distribution of the surplus, and in support of this contention their counsel cites : Grider v. Mc-Clay, 11 S. & R. 224; Dyer v. Cornell, 4 Pa. 359; Pennell's Appeal, 20 Pa. 517 ; Large's Appeal, 54 Pa. 385; Fahnestock v. Fahnestock, 31 W. N. C. 195; Darlington v. Darlington, 34 W. N. C. 85 ; Laughlin's Estate, 131 Pa. 333.

These cases do undoubtedly prove that the surplus money arising from the sale of land under orphans' court proceedings is as a rule to be considered as money, and descends as such, and not as land, but none of the cases cited, in the opinion of the auditor, establishes the principle that the necessary sale for the payment of debts, of property devised by a testator to a particular heir or devisee, will deprive such heir or devisee of the enjoyment of any surplus of the proceeds that may remain.  The law makes the claims of creditors superior to those of devisees, and where no provision is made by the testator for the payment of debts the law steps in and requires that testamentary dispositions of property shall be void so far, and only so far, as may be necessary in order that the creditors may be satisfied—and if the will be a valid one the distribution of the balance must be in accordance with its provisions.

In the judgment of the auditor, William Hubert, in his will, expressed with sufficient clearness his intention that his daughter Sallie, if she survived her mother, should enjoy his estate so long as she remained single ; in case of her marriage or death it shall be distributed among all his children in equal shares.  His object evidently was to provide for his unmarried daughter, who, after the death of himself and his wife, would have no one to provide for her.  And while that intention is to some extent interfered with by the paramount claims of creditors, requiring a conversion of the real estate into money, we fail to see any good reason why it should not be carried into effect, so far as circumstances permit, by giving the daughter the enjoyment of

the surplus until the contingency shall arise, upon which the testator directed that a distribution should be made.

The balance in hands of accountant, after payment of costs of audit, is therefore ordered to be invested under the direction of the orphans' court of Lancaster county, the interest or income thereof to be paid annually to Sallie Hubert during her natural life, if she remains unmarried, and upon her death or marriage the principal to be distributed among all the children of William Hubert and their heirs, per stirpes.

Exceptions to the auditor's report were dismissed by the court, LIVINGSTON, P. J.

*Errors assigned* were in dismissing exceptions to auditor's report.

*A. C. Reinœhl,* for appellant.—The fact that the real estate had been sold by order of orphans' court for payment of debts, turned the balance into money which was to be distributed among heirs: Grider v. McClay, 11 S. & R. 224; Dyer v. Cornell, 4 Pa. 359; Large's App., 54 Pa. 383; Kann's Est., 69 Pa. 219; 1 Jarman on Wills, 643.

*W. U. Hensel,* with him *J. Hay Brown,* for appellee.—The law has not made requisite to the validity of a will that it should assume any particular form or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property: 1 Jarman on Wills (5 Am. ed.), 33; Turner v. Scott, 51 Pa. 126; Clarke v. Ransom, 50 Cal. 595; act of April 8, 1833; Frew v. Clarke, 80 Pa. 170; Sullivan's Est., 130 Pa. 342; Wilson v. VanLeer, 103 Pa. 600.

PER CURIAM, May 27, 1897:

The fund for distribution represents the net balance of the proceeds of testator's real estate sold by order of court for payment of debts. The question was whether it should be presently distributed, or invested under the direction of the orphans' court during the lifetime of testator's daughter Sallie, if she so long

remains unmarried, and the interest paid to her, etc., and upon her death or marriage the principal distributed according to her father's will. The learned auditor held that a proper construction of the will required that the fund should be thus invested. Exceptions to his report were overruled by the court below and the report confirmed absolutely. Hence this appeal.

We are satisfied the court was clearly right in dismissing the exceptions and confirming the report. The will was rightly construed by the auditor; and for reasons given by him the decree should not be disturbed. There is nothing in the specifications of error that requires discussion.

. Decree affirmed and appeal dismissed at appellant's costs.